HEATHER S. WHITE (7674)
SNOW, CHRISTENSEN & MARTINEAU
10 Exchange Place, 11th Floor
Post Office Box 45000
Salt Lake City, Utah 84145
Telephone: (801) 521-9000
Fax No.: (801) 363-0400
hsw@scmlaw.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

STATE OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| MOLLY FARRAND, and THE ESTATE OF VINCENT JOHN FARRAND,<br><br>Plaintiffs,<br><br>vs.<br><br>CENTERVILLE CITY, JASON READ, and DOES 1-10,<br><br>Defendants. | **ANSWER**<br><br><br>Civil No. 1:16CV00037 DN<br><br>Judge David Nuffer |

Defendants Centerville City ("the City") and Officer Jason Read (collectively referred to as "Defendants") answer Plaintiffs' Complaint for Damages ("Complaint") as follows:

**FIRST DEFENSE**

Plaintiffs' Complaint fails to state a claim upon which this Court may grant relief.

**SECOND DEFENSE**

Defendants admit the following facts:

1. The City is a municipality incorporated under the laws of the State of Utah.

2. Officer Jason Read is, and was at all times alleged in Plaintiffs' complaint, employed as a peace officer with the City.

3. Officer Read was acting within the course and scope of his employment as a peace officer with the City during his encounter with Vincent Farrand ("Farrand") on April 13, 2014.

4. On April 13, 2014, at approximately 3:27 p.m., Molly Farrand called 911 to report that her husband, Vincent Farrand, was upset and driving with a gun to friend's house who had made a sexual advance toward Molly.

5. Officer Read was dispatched to the Farrand residence to obtain further information from Molly to give to officers responding to the friend's home.

6. Before Officer Read arrived, Farrand returned home. Molly relayed that information to dispatch and also told dispatch Farrand had put away the gun.

7. When Officer Read arrived at the Farrand residence, dispatch radioed that Farrand had retrieved the gun again.

8. He also noted that Molly, now outside, was still on the phone. She appeared frightened, shaken, upset, and as if she had been crying.

9. Worried for Molly's safety, Officer Read tried to get her to leave the immediate area. Molly refused so Officer Read physically removed her and took her next door, where she would be safer.

10. As Officer Read walked back to the house, Farrand exited the front door with a gun in his hand and walked toward Officer Read with the gun at his side.[1]

11. Officer Read told Farrand several times to drop the gun but Farrand did not. Instead, Farrand continued to walk toward Officer Read and a gate to the back yard where Molly had been standing, still holding the gun in his hand at his side and mumbling something to the effect of, "Shoot me. You're going to have to shoot me."

12. As Farrand was walking to the gate, Officer Read could see Farrand's finger move on and off the trigger.

13. When Farrand got to the gate, he started turning his upper body and raising his hand with the gun toward Officer Read.

14. Officer Read fired in response.

15. Farrand fell to the ground with the gun still in his hand.

16. Officer Read kicked the gun from Farrand's hand and called for medical assistance.

17. Officers rendered first aid to Farrand until paramedics arrived.

18. Farrand subsequently passed away.

19. The Davis County Attorney's Office investigated the shooting and concluded that Officer Read's use of force was justified.

---

[1] Plaintiffs misinterpret the officer's statement on the body camera claiming in paragraph 5 of the Complaint that Farrand "had a gun in his wastband [sic], which he immediately placed on the ground upon Defendant Officer Jason Reed's [sic] request." (Complaint, Docket 1, ¶ 5.) The officer states on the body camera, referenced in paragraph 6 of the Complaint, Farrand "came out with a gun in his hand, and then put it down and started running toward the fence. Then he turned around [inaudible]." The officer never said that Farrand put the gun on the ground. In using the phrase "put it down," the officer meant Farrand held the gun down at his side rather than up or out at someone.

Defendants deny each and every other allegation of Plaintiffs' Complaint except as specifically admitted.

### THIRD DEFENSE

This Court lacks subject-matter jurisdiction because Defendants did not violate Plaintiffs' constitutional rights.

### FOURTH DEFENSE

Defendants did not violate Plaintiffs' clearly-established, particularized, constitutional, statutory or common-law rights or privileges.

### FIFTH DEFENSE

Defendants acted in good faith, without malice, and their acts were justified and reasonable under the circumstances.

### SIXTH DEFENSE

Defendants are not liable under 42 U.S.C. § 1983 based on *respondeat superior* or any other theory of supervisory or derivative liability.

### SEVENTH DEFENSE

The City did not have a deliberately-indifferent policy, custom or practice.

### EIGHTH DEFENSE

Defendants are entitled to absolute and/or qualified immunity.

### NINTH DEFENSE

Plaintiffs' claimed injuries resulted from an independent intervening and/or superseding cause.

## TENTH DEFENSE

Defendants are absolutely immune from Plaintiffs' state law claims and those claims are barred by the Governmental Immunity Act of Utah, including, but not limited to, Utah Code Ann. §§ 63G-7-201, 63G-7-202 and 63G-7-301, and further by Plaintiffs' failure to comply with the appropriate provisions of that Act, including, but not limited to Utah Code Ann. §§ 63G-7-401, 63G-7-402, 63G-7-403 and 63G-7-601. Accordingly, the Court lacks jurisdiction over Defendants with respect to Plaintiffs' state law claims.

## ELEVENTH DEFENSE

Defendants' potential liability for any state law claims is limited to the maximum sum provided by Utah Code Ann. § 63G-7-604.

## TWELFTH DEFENSE

The individual Defendants did not act, or fail to act, through fraud or willful misconduct, as required by Utah Code Ann. § 63G-7-202.

## THIRTEENTH DEFENSE

Any injury or damage Plaintiffs sustained was caused or contributed to by their own fault, including that of Mr. Farrand, which equals or exceeds that of Defendants, if any, thus barring recovery pursuant Utah Code Ann. § 78B-5-817 through 78B-5-823.

## FOURTEENTH DEFENSE

Any injury or damage Plaintiffs sustained was solely caused or contributed to by the fault of third persons not parties to this action and fault should be allocated to each under Utah Code Ann. §§ 78B-5-817 through 78B-5-823.

## FIFTEENTH DEFENSE

Plaintiffs' claims are barred by the statute of limitations, Utah Code Ann. § 78B-2-307 and Utah Code Ann. § 63G-7-403.

## SIXTEENTH DEFENSE

Plaintiffs failed to mitigate their damages, and thus, any potential recovery must be reduced or barred.

## SEVENTEENTH DEFENSE

Plaintiffs' punitive damage claim is barred by, *inter alia*, the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, federal common law, Article I, Sections 7 and 10 of the Utah Constitution and the Governmental Immunity Act of Utah, § 63G-7-603.

WHEREFORE, Defendants request that the Court dismiss Plaintiffs' Complaint, that Plaintiffs take nothing, and that the Court order Plaintiffs to pay Defendants their costs and attorneys' fees pursuant to 42 U.S.C. § 1988 and Utah Code Ann. § 78B-5-825.

## JURY TRIAL DEMANDED

Defendants request a jury trial on all claims.

DATED this 25th day of March, 2016.

SNOW, CHRISTENSEN & MARTINEAU

_____
Heather S. White
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of March, 2016, I electronically filed the foregoing **ANSWER** with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

> Jon D. Williams, Esq.
> 9 Exchange Place, #600
> Salt Lake City, Utah 84111
> jwilliam@lawyer.com
>
> *Attorneys for Plaintiffs*

I also sent notification of such filing via email to the following:

> Mark J. Geragos
> GERAGOS & GERAGOS
> 644 South Figueroa Street
> Los Angeles, California 90017
> mark@geragos.com
>
> *Attorneys for Plaintiffs*

> <u>*/s/ Annette Gamero*</u>